# EXHIBIT 34

```
                                                                 1
 1
 2             IN THE UNITED STATES DISTRICT COURT
 3                FOR THE DISTRICT OF NEW JERSEY
 4
 5   TAKEDA PHARMACEUTICAL        )
     COMPANY LIMITED, TAKEDA      )
 6   PHARMACEUTICALS NORTH        )
     AMERICA, INC., TAKEDA        )  Civil Action No.
 7   PHARMACEUTICALS LLC, TAKEDA  )  3:11-CV-02506-
     PHARMACEUTICALS AMERICA,     )  JAP-DEA
 8   INC., and ETHYPHARM, S.A.,   )
                Plaintiffs,       )
 9                                )
              vs.                 )
10                                )
     MYLAN PHARMACEUTICALS,       )
11   INC.,                        )
                Defendant.        )
12   _____ )
13
14            DEPOSITION OF DR. RUSSELL MUMPER
15                  New York, New York
16                    June 6, 2012
17
18
19
20   Reported By:
21   CATHI IRISH, RPR, CLVS, CCR
22
23
24
25
```

```
                                                    110
 1                      MUMPER
 2      suspended, or an ODT that was meant to
 3      disintegrate in the mouth, that a slight
 4      increase in viscosity would have a positive
 5      attribute, like maybe a smoother, more
 6      pleasant sensation, or again, aid in the
 7      particles being suspended in the mouth just
 8      prior to swallowing.  So I don't think that
 9      increasing viscosity for an ODT would always
10      be a bad thing.
11   BY MS. CHOW:
12      Q.   In rendering your opinion as to the
13   purported indefiniteness of permits to obtain
14   reduced influence of viscosity, did you take the
15   prosecution history into account?
16      A.   Yes, I recall in the prosecution
17   history that this claim term was included to
18   differentiate the '632 claim from prior art that
19   was similar or perhaps the same invention but that
20   included an excipient that increased the
21   viscosity.
22      Q.   Like guar gum, right?
23      A.   Off the top of my head, I can't recall
24   specifically what excipient it was but I know it
25   was a viscosity increasing excipient.
```

```
                                                    111
 1                      MUMPER
 2      Q.   Okay.  What did you take from the fact
 3   that during prosecution the patentee was
 4   differentiating over prior art that included an
 5   excipient that increased viscosity, what did you
 6   take from that?
 7      A.   What I took from that is that the '632
 8   patent with respect to that claim element needed
 9   to differentiate that specific claim or the claim
10   would have not been novel and awarded because
11   there was prior art that had already claimed every
12   element of claim 1 except for that viscosity term.
13      Q.   So you understood that it was
14   significant that the patentee had to include the
15   phrase "permits to obtain reduced influence of
16   viscosity" in order to overcome the prior art but
17   you still concluded that the claim term was
18   indefinite; is that right?
19          MR. MUKERJEE:  Objection as to
20      characterization of the witness's testimony.
21      You can answer.
22          THE WITNESS:  I still concluded that
23      this claim term "reduced influence of
24      viscosity" is indefinite.  I recognize that
25      the '632 claim was being constructed in such a
```

```
                                                    112
 1                      MUMPER
 2      way to eliminate the prior art.  The problem I
 3      have with that is that the prior art included
 4      an excipient that increased viscosity, and
 5      that prior art as I recall had a number of
 6      examples of a viscosity increasing agent, and
 7      as we discussed earlier, the examples aren't
 8      meant to embody the complete invention.  So
 9      inherent in that prior art was the addition of
10      the viscosity increasing agent so it could be
11      at many different levels.  So how does one
12      know when practicing '632 if they would want
13      to, as required, reduce influence of viscosity
14      relative to the prior art?  How much of that
15      excipient or lack of excipient would be needed
16      to have a reduced influence of viscosity?
17      That is an indefinite term and one that
18      scientifically would be very difficult to
19      arrive at in my opinion.
20   BY MS. CHOW:
21      Q.   Do you understand that if there's a
22   claim term that you may not understand what it
23   means when you just read the claim, that the
24   prosecution history can shed light on the meaning
25   of that claim?  Do you understand that concept?
```

```
                                                    113
 1                      MUMPER
 2      A.   I believe I understand the concept that
 3   you're trying to portray or trying to relay to me.
 4   To me, that's probably analogous to teaching a
 5   sustained-release agent but the prosecution
 6   history reveals that it may be a cushioning agent,
 7   so I think you're trying to make that correlation.
 8      Q.   Okay, well -- so when you rendered your
 9   opinions as set forth in your declaration, did the
10   prosecution history influence any of your
11   conclusions?
12      A.   Are you asking me with respect to this
13   term reduced pH influence?  I'm sorry, reduced
14   influence of viscosity?
15      Q.   Sure, I'll take that to start.
16      A.   I think I just addressed that but let
17   me restate.
18          As I mentioned, I did look at the
19   prosecution history and the prior art that
20   included an agent that increased viscosity and
21   looked at what that taught and what it was doing.
22   I looked at the prosecution history.  I understood
23   that '632, claim 1 was trying to move around that
24   prior art by having the term "reduced influence of
25   viscosity."
```

29 (Pages 110 to 113)